**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **FARAH AWAD, ATA BOULES,** | ) | |
| **NAGY EILIA, and GAWHARA EILIA,** | ) | |
| **on Behalf of THEMSELVES and All** | ) | |
| **Others Similarly Situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-00130** |
| **TYSON FOODS, INC. and** | ) | |
| **TYSON FRESH MEATS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Pending before the Court are two motions: (1) Defendants Tyson Foods, Inc.'s and Tyson Fresh Meats, Inc.'s Partial Motion to Dismiss Amended Complaint (Docket No. 29); and (2) Plaintiffs' Motion for Conditional Class Certification, Court-Supervised Notice, and Equitable Tolling (Docket No. 44). A common issue is both this whether the Court should equitably toll the statute of limitations in this action under the Fair Labor Standards Act ("FLSA").

## I. Background

Plaintiffs Farah Awad, Ata Boules, Nagy Eilia, and Gawhara Eilia are current and former production workers at Defendants' Goodlettsville, Tennessee meat production facility. Plaintiffs allege that they and those they seek to represent worked over forty (40) hours per week but were not paid overtime.

Plaintiffs' claims are essentially two-fold. First, they allege the were required to perform work before their designated pay start time,

including: (1) collecting and donning a frock; (2) washing their hands; (3) walking

1

through a sanitizing solution; (4) waiting to clock in; and (5) after clocking in (but before being compensated) collecting, sanitizing, and donning additional gear and equipment (e.g., safety glasses, green rubber gloves, plastic arm sleeves, Plexiglass forearm guard, mesh glove, belly guard, rubber apron, skinner gloves, scabbard, steel, hook, and hook holder), walking to their workstations, and waiting for product to arrive at their workstations.

(Docket No. 17, Amended Complaint ¶ 24).

Second, Plaintiffs complain that they were required to perform work during uncompensated

meal periods. In this regard, they allege:

28. Tyson deducts thirty (30) minutes per day from the paycheck of each hourly employee, regardless of whether the employee has a meal break or is relieved of duty for the full thirty (30) minutes.

29. Hourly employees who work on production floors, including Plaintiffs and those they seek to represent, do not clock out for lunch. Rather, pay for thirty (30) minutes is automatically deducted.

30. Hourly production employees rarely, if ever, leave for lunch at the start of the thirty (30) minute meal period. They are not allowed to leave the production line as long as there is meat on the production line, and must doff and don most of their gear, equipment, and clothing during their uncompensated meal break.

31. They are required to return to the floor at a set time, regardless of the time they actually leave the floor for their meal break.

(Id. ¶¶ 28-30).

Based upon those allegations, Plaintiffs request that this Court approve the issuance of notice

to two groups of workers and former workers at Tyson's Goodlettsville facility. Those groups are:

All hourly paid production employees of Defendants who have worked at Tyson's Goodlettsville, Tennessee facility at any point from May 4, 2006 through May 25, 2014, who, according to Defendants' records, had a primary language other than English and Spanish, and who did not resolve their FLSA claims in that litigation.

And:

All hourly paid production employees of Defendants whose primary language

according to Defendants' records is either English or Spanish, who have worked at Tyson's Goodlettsville, Tennessee facility at any point from February 12, 2012 through May 25, 2014, and who did not opt into the FLSA collective action in Abadeer v. Tyson Foods, Inc., No. 3:09-cv-00125 (M.D. Tenn.).

As suggested by their reference to Abadeer, the allegations Plaintiffs raise are not new. In fact, Tyson has been at the receiving end of two prior collective actions involving nonpayment for donning and doffing activities at the Goodlettsville plant.

The first, Jordan v. IBP, Inc., No. 3:02-01132 (M.D. Tenn. 2012), was filed in 2002. It settled in 2008 before trial, after two rounds of FLSA opt-in notice, which included translations in several different languages, including Arabic, which is the primary language that present Plaintiffs speak. The notices were in keeping with the parties' "Agreed Order Providing Form of Notice" which required Tyson to "send one copy of the notice to each employee in the first language designated by the employee according to the company's personnel records along with an English language copy of the notice if English is not the employee's first language." (Case No. 3:02-1132, Docket No. 125, ¶ 20 4). At the time of settlement, 638 hourly employees had opted in.

The second, Abadeer, was filed in 2009. The complaint in that case originally asserted FLSA claims for pre- and post-shift and meal period donning and doffing activities, but was later amended to include state law breach of contract claims for the same activities. Two rounds of Court-approved notice were sent to eligible current and former employee, one in January 2011, the other in January 2014.

According to counsel who represented Tyson in Abadeer and Jordan (and represents Tyson in this case as well), after the first round of notices, at least 480 current and former employees had written notice of the litigation; by the end of the second notice period, 1508 current and former employees opted into the collective action in Abadeer. Also according to counsel, each of the four

named Plaintiffs in this case were on the <u>Abadeer</u> mailing list for Court-approved notice in 2011, and almost 75% of the opt-in Plaintiffs in this case were mailed notice in <u>Abadeer</u>.[1] Further, of the 16 employees and former employees deposed in <u>Abadeer</u>, two required an Arabic language interpreter at their depositions.

Unlike both notices in <u>Jordan</u>, the January 2011 notice in <u>Abadeer</u> was only in English and Spanish. Notices were not sent in Arabic. Tyson asserts that this was because Plaintiffs' counsel[2] did not seek translation of the notice into anything other than Spanish, even though they knew that Arabic was the primary language of many of the employees at the Goodlettsville facility. The 2014 settlement notices in <u>Abadeer</u> was sent out in three languages, English, Spanish and Arabic.[3]

## II. Discussion

The statute of limitations for FLSA actions is generally two years, but is extended to three years for willful violations. 29 U.S.C. § 255(a). Since this case was filed on February 12, 2012, Plaintiffs' claims accrued sometime in mid-February 2012, at the latest. Nevertheless, they ask the Court to extend the limitations period back to May 4, 2006, for them and the "hundreds of other workers at the facility [who] did not receive notice in their primary language[.]" (Docket No. 45 at

---

[1] As of the time of the filing of counsel's declaration, 220 individuals had filed notices of consent in this case. Since that time, it appears that only seven more individuals have filed consents. Even if none of those opt-ins received notice in <u>Abadeer</u> (which seems unlikely), this would not reduce the percentage by much.

[2] The same counsel represented Plaintiffs in both <u>Abadeer</u> and <u>Jordan</u>. Different counsel represent Plaintiffs in this action.

[3] Because the proposed settlement was meant to settle a hybrid FLSA/Rule 23 action, two different notice forms were sent: one for Plaintiffs who had affirmatively opted into the FLSA collective action, and one for the Rule 23 class members. Those who had not opted into the collective action were informed via the Rule 23 settlement notice that they would not receive any of the monies allocated to the FLSA claim.

4

2). This corresponds to the outside limitations period for the <u>Abadeer</u> Plaintiffs' FLSA claims.[4]

In the Motion to Dismiss, Tyson seeks dismissal of Plaintiffs' claims to the extent they are seeking to extend the limitations period beyond the maximum three year period under the FLSA. In response, Plaintiffs argue (among other things) that the request is premature because the Motion preceded any request by Plaintiffs for tolling. In Plaintiffs' view, Tyson's Motion is grounded not on what the Complaint pleads, but rather on what counsel represented to Tyson during settlement discussions. Plaintiffs also argue that Tyson's motion is "little more than a request for an advisory opinion, which the Case and Controversy Requirement of the U.S. Constitution clearly prohibits." (Docket No. 43 at 2).

As a procedural matter, Plaintiffs are likely correct, but their posturing is unhelpful. After pointing out the perceived prematurity of Tyson's request, Plaintiffs make "clear" that they "**do** believe that they are entitled to equitable tolling" (Docket No. 43 at 4, emphasis in original), and contemporaneously filed their Motion for Conditional Certification and Court-Supervised Notice in which they specifically request that the Court extend the limitations period back to May 4, 2006.

For added measure, Plaintiffs abjure Tyson's suggestion that the question of equitable tolling may need to be deferred to the extent that it presents individualized inquiries unsusceptible of class-wide determination. Indeed, Plaintiffs take the all-or-nothing position that the issue of tolling should be addressed globally and at this early stage of the litigation. They write: "If the Court is disinclined to find equitable tolling warranted as to all Plaintiffs and putative Plaintiffs, then Plaintiffs do not believe individualized analysis or discovery will result in another outcome, and the Court should

_____

[4] The settlement in <u>Abadeer</u> covered FLSA overtime claims back to May 4, 2010 for those plaintiff who had affirmatively opted into the action.

simply deny Plaintiffs' request for tolling," a position they reiterate at the conclusion of their reply brief in support of their Motion for Conditional Certification. (Docket No. 60 at 3-4).

The Court decides the request for equitable tolling in the context of Plaintiffs' Motion for Conditional Certification. The Court does so not simply because Tyson's request via its Motion to Dismiss is arguably premature, but because, in advancing their respective positions on equitable tolling, the parties go far beyond the pleadings that have been filed in this case.

Turning to the merits, "[t]he doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010) (citation omitted). Except where the facts are undisputed, its application is a matter of discretion." Amini v. Oberlin Coll., 259 F.3d 493, 498 (6th Cir. 2001). Even so, "[t]he federal courts sparingly bestow equitable tolling," Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560 (6th Cir. 2000), applying it only "when their exist exceptional circumstances that have prevented timely filing of the action through no fault of the Plaintiff," Ayers v. United States, 277 F.3d 821, 828 (6th Cir. 2002)

Some courts have suggested that active deception on the part of the employer is necessary for equitable tolling to be the basis for tolling a statute of limitations. See e.g., Benton v. Town of South Fork & Police Dept., 553 Fed. App'x 772, 779 (10th Cir. 2015) (citation omitted) ( "Equitable tolling 'is appropriate only where the circumstances of the case rise to the level of active deception . . . where a plaintiff is lulled into inaction by [his] past employer'"); Lekas v. United Airlines, Inc., 282 F.3d 296, 301 (4th Cir. 2002) ("Equitable tolling applies where a defendant, by active deception, conceals a cause of action"); Hananiya v. City of Memphis, 356 F. Supp. 2d 871, 875 (W.D. Tenn.

6

2005) (citations omitted) ("Courts have held that equitable tolling is appropriate in cases of active

deception" or "where an employee has been 'actively misled' or prevented in an extraordinary

manner from asserting his or her rights").  The Sixth Circuit, however, does not appear to have gone

that far.

> Instead, the Sixth Circuit has
>
> identified five factors to consider when determining the appropriateness of equitably tolling a statute of limitations: 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness is remaining ignorant of the particular legal requirement.

Truitt v. Cty. of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).  This list is not comprehensive, nor is

"each of the five considerations . . . material in all cases."  Graham-Humphreys, 209 F.3d at 561.

Rather, "[t]he propriety of equitable tolling must necessarily be determined on a case-by-case basis."

Truitt, 148 F.3d at 648.

With regard to the first two prongs, Tyson argues that Plaintiffs had constructive notice by

virtue of the FLSA itself.  After all, "'[i]t is well-settled that ignorance of the law alone is not

sufficient to warrant equitable tolling,'" Cheatom v. Quicken Loans, 587 F. App'x 276, 281 (6th Cir.

2014) (citation omitted)), and the Sixth Circuit, in an unpublished opinion, stated that the "statute

itself gave the plaintiffs constructive notice of the fact that [their employer] was violating their rights

under the FLSA and of the deadline for filing suit,"Archer v. Sullivan Cty., 1997 WL 720406, at *4

(6th Cir. 1997).  However, the Court gives this form of "notice" little weight because, as it has

previously explained, Archer's rationale was "implicitly rejected in the latter case of Hughes v.

Region VII Area Agency on Aging, 542 F.3d 169, 188 (6th Cir. 2014), and "if the mere existence

of a law is enough to give constructive notice, then the equitable-tolling inquiry into notice-related

factors is meaningless[.]" Thompson v. Direct Gen. Consumer Prod., Inc., 2014 WL 884494, at *9 (M.D. Tenn. Mar. 5, 2014).

The FLSA aside, the record reflects that each of the named Plaintiffs and many of the opt-in Plaintiff were sent FLSA and Rule 23 notice in Jordan in 2004 and 2006, and/or notice in Abadeer in 2011 and 2014, involving the same sorts of claims presented here. While the FLSA opt-in notices in Abadeer were not translated into Arabic (but the Rule 23 settlement notice was), it defies credulity to think that those working at the plant were blissfully ignorant of what was going on. This suggested ignorance would mean that, by and large, employees who receive correspondence from their employer that they allegedly did not understand choose to ignore it rather than seek an explanation.

Plaintiffs' suggestion that they were unaware is further undermined by the fact that, prior to suit being filed in Abadeer, counsel engaged in an active solicitation campaign. That campaign touted the recoveries in Jordan and was successful enough that 278 at the plant had opted in by the time suit was filed, and close to 300 more had joined by the time the first Court-approved notice was mailed. Thus, and forgetting that over 1500 employees and former employees ultimately elected to opt into Abadeer, at least 570 showed more than a passing interest in the case early on. See Thompson, 2014 WL 88494, at *10 (noting that "[w]hile precertification communications with potential class members are generally unobjectionable . . . it undermines the Plaintiffs' claims that the recipients of these letter lacked actual notice").

Moreover, it can hardly be said that all those who opted into Abadeer are fluent in either English or Spanish. In fact, two of the deponents in Abadeer gave their deposition testimony in Arabic. It is difficult to believe that word did not spread to those who also spoke that language,

particularly since the lead Plaintiff in Abadeer spoke Arabic.

In so concluding, the Court has considered the four, substantially similar, declarations filed by the named Plaintiffs in this case. Each Plaintiff claims to be proficient only in Arabic, with little or no understanding of English. Each also claims to have not received notice, or has no recollection of having received notice in either Abadeer or Jordan. While facially supportive of Plaintiffs' overall position, the Declarations are hardly compelling, particularly since the veracity of two of the declarants have been called into question.

Plaintiff Ata Boules states in his Declaration that he is "a native speaker of Arabic" and "speak[s] no English." (Docket No. 46, Boules Decl. ¶ 3). However, according to Tyson, Boules is used as an interpreter at the Goodlettsville plant, where he often translates between English and Arabic. Further, he speaks English with his supervisor and co-workers, and completes label verification paperwork in English.

Plaintiff Nagy Eilia, too, claims to be a "native speaker of Arabic," and "speak[s] little English." (Docket No. 49, Eilia Decl. ¶ 3). Nevertheless, and again according to Tyson, Eilia recently interviewed for the position of Quality Captain without the use of an interpreter. Further, his supervisor communicates with him in English. Additionally, as a Quality Captain, Eilia is required to understand product specifications that are written in English, and report results in a computer program in English.[5]

As for the third and fifth factors, it cannot be said that Plaintiffs acted diligently in pursuing their rights under the FLSA, or that it was reasonable for them to remain ignorant of their rights.

---

[5] Although these discrepancies were brought to the Court's attention in Tyson's response brief, they were left glaringly unaddressed in Plaintiffs' reply.

Leaving aside putative Plaintiffs in this case who also received notice(s) in <u>Jordan</u>, the opt-in notices in <u>Abadeer</u> were sent in 2011 and each of the named Plaintiffs in this action was on the mailing list for that notice. This case, however, was not filed until 2015, some four years later, after <u>Abadeer</u> was settled.

Even accepting the now-questionable assertion that all of the named Plaintiffs do not understand English, it is simply unreasonable to assume that they – and what they claim to be perhaps hundreds of other employees and former employees at the Goodlettsville plant – were in the habit of ignoring documents sent from work, and the consequential peril such ignorance could bring. Presumably most did not ignore their W-2 tax forms that were provided in English, and it only makes sense that an official-looking document from the employer would at least pique curiosity.

The third prong, potential prejudice to Defendants, cuts both ways. On the one hand, Tyson, as an employer is responsible for paying its employees for all compensable work, and the collective action device serves "the important remedial purpose" of allowing those who have suffered relative modest harm to "join a larger pool of similarly situated plaintiffs" in an effort to secure that which is rightfully theirs. <u>Gunn v. NPC Int'l</u>, 2015 WL 5061545, at *6 (6th Cir. Aug. 28, 2015). On the other hand, Tyson is allowed to rely on a "statute of limitations which require plaintiffs to pursue 'diligent prosecution of known claims[.'" <u>CTS Corp. v. Waldburger,</u> 134 S.Ct. 2175, 2183 (2014).

Plaintiffs' all-or-nothing position may be at the expense of some who may actually have a valid basis for requesting the extraordinary relief of tolling. However, that position, and the fact that it could conceivably impact the truly ignorant, presents yet another and fundamental reason why conditional certification is inappropriate under the circumstances of this case.

Whether equitable tolling is appropriate is necessarily fact-specific. <u>See</u>, <u>Holland v. Fla</u>, 130

S.Ct. 2549, 2565 (2010); Henson v. Warden, 620 F. App'x 417, 421 (6th Cir. 2015) ("each equitable-tolling case is necessarily fact specific"). "[I]t is a plaintiff's burden to demonstrate why he or she is entitled to equitably toll the statute of limitations in a particular case," Lemmon v. Harry & David Operations, Inc., 2016 WL 234854, at *8 (S.D. Ohio Jan. 20, 2016), and, therefore, is "inappropriate for group consideration in the context of an FLSA collective action." Atkinson v. TeleTech Holdings, Inc., No. 3:14-CV-253, 2015 WL 853234, at *9 (S.D. Ohio Feb. 26, 2015). See, Geiger v. Z-Ultimate Self Def. Studios LLC, 2015 WL 1139843, at *3 (D. Colo. Mar. 11, 2015) ("If a particular plaintiff, putative opt-in plaintiff, or group of plaintiffs demonstrates circumstances that justify equitable tolling, then equitable tolling may be appropriate for that particular plaintiff or group of plaintiffs. However, there is no basis to assume, based on the circumstances asserted on the current record, that all plaintiffs and all potential opt-in plaintiffs in this case somehow have been prevented from filing a timely FLSA claim"); Prise v. Alderwoods Grp., Inc., 817 F. Supp. 2d 651, 673 (W.D. Pa. 2011) ("[A]n individual inquiry of opt-in plaintiffs may be necessary to determine . . . whether a particular plaintiff would be barred from recovery by the statute of limitations or the doctrine of equitable tolling. Such an inquiry illustrates the difficulties plaintiffs face in their attempt to meet their burden to demonstrate collective action certification is proper.")

No doubt there will be times when the issue of equitable tolling can be determined for a whole group of individuals, but this is not that case. Plaintiffs' request for equitable tolling is premised on the extremely suspect notion that all non-English and non-Spanish speaking employees at the Goodlettsville plant were unaware of what was going on in both Jordan and Abadeer. It is also premised on the notion that all employees whose primary language is Arabic have no working understanding of English, even though that premise has been called into serious doubt in relation

to two of the four named Plaintiffs who filed declarations in this case.

### III. <u>Conclusion</u>

On the basis of the foregoing, the Court finds that exceptional circumstance have not been presented so as to justify equitable tolling of the statute of limitations. Because Plaintiffs' Motion for Class Certification is in the conjunctive, the Court will deny that request without prejudice to Plaintiffs refiling such a motion which does not include a request that the statute of limitations be tolled. Given these determinations, Defendants' Motion for Partial Dismissal will be denied as moot.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE