IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FARAH AWAD, ATA BOULES, NAGY EILIA, and GAWHARA EILIA, on Behalf of THEMSELVES and All Others Similarly Situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>TYSON FOODS, INC. and TYSON FRESH MEATS, INC.,<br><br>    *Defendants*. | COLLECTIVE ACTION<br><br>CIVIL ACTION<br><br>CASE NO. 3:15-cv-00130<br><br>JUDGE SHARP<br>MAGISTRATE JUDGE NEWBERN |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR ATTORNEYS' FEES AND EXPENSES, AND SERVICE PAYMENTS TO THE NAMED PLAINTIFFS

Plaintiffs Farah Awad, Ata Boules, Nagy Eilia, and Gawhara Eilia ("Plaintiffs"), on behalf of themselves and all others similarly situated, and Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. ("Defendants") have reached a comprehensive settlement in this Fair Labor Standards Act ("FLSA") case, subject to this Court's approval. The parties have filed a Joint Motion for Approval of their proposed Settlement Agreement (the "Agreement")[1] and a supporting memorandum simultaneously herewith. Plaintiffs now file this separate memorandum to demonstrate the reasonableness of the agreed-upon attorneys' fees and expenses recovery, as well as the reasonableness of the agreed upon service payments to each Named Plaintiff.

As set forth in greater detail below, the agreement to pay fees, expenses and service payments is fair and reasonable. Pursuant to the Agreement, Defendants have agreed to pay $310,000 to resolve Plaintiffs' claim for fees and expenses through the execution of the Agreement. This amounts to approximately $280,000 to resolve Plaintiff's claim for fees and

---

[1] A copy of the Agreement is attached as Attachment 1 to the parties' Joint Motion.

approximately $30,000 for reimbursement of their expenses. The fee payment under the Agreement represents approximately a twenty percent (20%) reduction from Plaintiff's fees through the execution of the Agreement. Also, Defendants have agreed to pay up to an additional $30,000 for fees and expenses incurred as part of the post-settlement notice process, as explained below.

In total, the Agreement provides approximately $580,000 in FLSA damages for Plaintiffs in this litigation. The Agreement provides for payment of $239,303.00 to Opt-In Plaintiffs who joined this litigation by August 29, 2016. The agreement also provides approximately $340,000 for post-settlement Opt-In Plaintiffs, who will have the opportunity to join the settlement through a post-settlement notice process.

Similarly, the substantial investment of time and effort made by the Named Plaintiffs justifies the payment of service payments in an amount of $10,000. Despite a substantial language barrier, the Named Plaintiffs, who are Arabic speakers, met with their counsel numerous times to advance this litigation to, *inter alia*, complete declarations, prepare for depositions, discuss strategy, and negotiate the Agreement. Each sat for a translated deposition that met or exceeded Rule 30(d)'s seven-hour limit. At a minimum, Plaintiffs' counsel's billing records reflect that the Named Plaintiffs each invested dozens of hours in this case, although these records do not capture all of the time or effort they invested in this case. These efforts resulted in approximately twenty-five (25%) participation by potential Opt-In Plaintiffs without even the benefit of written notice and a settlement that permits all potential 216(b) Opt-In Plaintiffs to benefit from this case. In short, the service payments are reasonable and justified based on the tireless efforts of the Named Plaintiffs.

I. BACKGROUND

Plaintiffs Awad, Boules, and Nagy Eilia brought this case against Defendants in February

2015 as a putative collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).[2] Plaintiffs allege that they and similarly situated current and former production employees at Defendants' Goodlettsville, Tennessee facility are owed overtime wages because they were not compensated for donning and doffing activities performed prior to the time when their paid shift began and during their unpaid meal breaks. The parties have completed a substantial amount of discovery and hotly contested numerous procedural and discovery issues, including two motions for conditional certification and several motions related to the production of discovery. Recognizing the risk, cost, and uncertainty associated with continuing to litigate Plaintiffs' claims, the parties engaged in lengthy arm's length negotiations over several months resulting in the Agreement. Part of that Agreement is the payment of Plaintiffs' attorneys' fees and expenses and service payments to the Named Plaintiffs by the Defendants.

### A. The Efforts of Plaintiffs' Counsel

Plaintiffs' counsel undertook the representation of the Plaintiffs' in this case on a contingency basis. *See* Declaration of David W. Garrison ("Garrison Decl.") ¶ 19. As a result, during the more than 18 months since this action was filed, Plaintiffs' counsel has not received any compensation for their attorneys' fees and advanced expenses. *Id.* Through October 12, 2016, when the Agreement was executed, Plaintiffs' counsel incurred more than $350,000 in attorneys' fees and more than $34,000 in expenses. Garrison Decl. ¶ 12. In short, Plaintiffs' counsel has invested substantial time and resources to this litigation, and, as a result, achieved an excellent outcome in the form of the parties' Agreement. *Id.*

As Lead Counsel for the Plaintiffs, undersigned counsel was responsible for assigning work to attorneys and professional staff working on this case. *Id.* ¶¶ 1, 17. In assigning work, the

---

[2] Plaintiffs filed an Amended Complaint adding Gawhara Eilia as a Named Plaintiff on March 9, 2015.

skills and experience of the attorneys and staff were taken into account and this matter was staffed leanly with only the particular complement of lawyers and professional staff reasonably necessary to serve the needs of the Plaintiffs and their claims. *Id.* ¶ 17. Similarly, undersigned counsel ensured that the expenses incurred in this litigation were only those necessary to advance the Plaintiffs' claims in this litigation. *Id.* ¶ 18.

Still, Plaintiffs' counsel performed substantial work and incurred significant expenses, in large part due to three factors: (1) Defendants have mounted a vigorous defense of this case on various procedural and discovery issues; (2) throughout this case, it has been necessary to retain the services of translators and interpreters to effectively communicate with Named and Opt-In Plaintiffs verbally and in writing, the vast majority of whom do not speak or read English; and (3) an analysis of large amounts of payroll and time and attendance data was necessary to value Plaintiffs' claims and reach the Agreement. *Id.* ¶ 20.

The work performed by Plaintiffs' counsel includes: (1) meeting with Plaintiffs to prepare for litigation and to retain Named Plaintiffs; (2) thoroughly researching and investigating the claims in this action, including detailed review of prior litigation challenging Defendants' policies at the Goodlettsville, Tennessee facility, and interviewing the Named Plaintiffs to ensure the Complaint was narrowly tailored; (3) conducting mass, half-day long meetings with hundreds of potential and actual Opt-In Plaintiffs to ensure they were informed of their rights and to fully investigate their claims; (4) fully briefing conditional certification twice; (5) drafting written discovery requests and reviewing Defendants responses (including thousands of pages of documents and working with a statistical expert to understand the payroll and time and attendance data produced for hundreds of Plaintiffs); (6) assisting the Named Plaintiffs in responding to 21 interrogatories and 27 requests for production of documents with the constant

4

assistance of an Arabic interpreter and translator to conduct in person meetings and telephone calls and to translate written responses; (7) fully briefing Defendants' motion to compel responses to these requests from all Opt-In Plaintiffs twice; (8) briefing multiple other discovery and procedural disputes; (9) preparing for and defending the translated depositions of the four Named Plaintiffs, which all reached or exceeded the seven-hour limit under Rule 30(d); (10) leading the months-long negotiations resulting in the Agreement presently before the Court; and (11) briefing the approval of the settlement in this matter. *Id.* ¶ 23.

Approximately ninety percent (90%) of the Plaintiffs who joined this action, including the Named Plaintiffs are not native speakers of English. *Id.* ¶¶ 18, 21. The vast majority of the non-English speakers who joined are Arabic speakers, like the Named Plaintiffs. *Id.* ¶ 21. As a result, virtually all interactions with the Named and Opt-In Plaintiffs related to this case—whether verbal or written—took place through an interpreter. *Id.* ¶¶ 20-21, 35. This includes the meetings and preparation of written translations related to the Named Plaintiffs' declarations in support of conditional certification, the responses of each Named Plaintiff to 48 detailed written discovery requests, and the preparation for and giving of lengthy, translated depositions by all four Named Plaintiffs. *Id.* ¶ 23. In short, ordinary aspects of the litigation process required substantial investment of attorney time and resulted in significant expenses due to the high percentage of Plaintiffs not fluent in English. *Id.* ¶ 22.

Still, all of this work resulted in an excellent result, evident in the high participation rate without formal written notice, a monetary recovery comparable to that in *Abadeer v. Tyson Foods, Inc.*, No. 3:09-cv-125 (M.D. Tenn.) (hereafter "*Abadeer*"), a virtually identical case,[3] and

---

[3]  The basis for the amounts the Named and Opt-In Plaintiffs, as well as any individuals who opt into this action pursuant to the post-settlement notice process will receive under the

a post-settlement notice procedure that ensures hundreds more individuals are sent notice of their right to participate in this settlement. *Id.* ¶¶ 8, 24-28.

### B. The Efforts of the Named Plaintiffs

Named Plaintiffs' Farah Awad, Ata Boules, Nagy Eilia, and Gawhara Eilia have remained exceptionally committed to advancing the FLSA claims in this action on behalf of themselves and all others similarly situated. *Id.* ¶ 32. As a result of their efforts, hundreds of eligible individuals joined this action, and hundreds more will have the opportunity to do so as part of the post-settlement notice procedure pursuant to the parties' Agreement. *Id.* ¶ 34. The Named Plaintiffs have continuously demonstrated this commitment despite significant language barriers and a lack of familiarity with the American legal system. *Id.* ¶ 32. In fact, three of the Named Plaintiffs took on this responsibility against their current employer. *Id.*

The Named Plaintiffs' efforts in this case include, *inter alia*: (1) extensive outreach to potential plaintiffs who did not resolve their claims in the *Abadeer* litigation, resulting in hundreds of eligible individuals participating in this case; (2) attendance at numerous meetings to, among other things, assist Plaintiffs' counsel in investigating their claims and initiating this lawsuit, discuss case strategy, complete declarations in support of conditional certification, respond to 21 interrogatories and 27 requests for production of documents, prepare for depositions, and negotiate the proposed settlement in the best interest of both the current Opt-In Plaintiffs and the individuals eligible to participate via the post-settlement notice process; (3) remaining in communication with Plaintiffs' counsel despite the necessity of coordinating all written and verbal communications through an Arabic translator/interpreter; and (4) each giving lengthy, translated depositions that met or exceed Rule 30(d)'s seven-hour limit. *Id.* ¶ 33.

---

settlement is explained in detail in the Memorandum in Support of the Parties' Joint Motion for Joint Motion for Approval of Settlement Agreement.

Plaintiffs' counsel's billing records alone—which do not capture all of the Named Plaintiffs' efforts—reflect that each of the Named Plaintiffs spent at least the following working on this case with their counsel: Farah Awad, approximately 30 hours; Ata Boules, approximately 35 hours; Nagy Eilia, approximately 31 hours; and Gawhara Eilia, approximately 27 hours. *Id.* ¶ 37. However, their most significant contribution—ensuring that hundreds similarly situated workers learned of, and ultimately joined, this case, despite the fact that written notice was not issued—is not reflected in these records. *Id.*

## C.  The Settlement

While the parties' Agreement contains several salient components (addressed in detail in the parties Joint Motion and jointly-filed supporting memorandum), this memorandum addresses Defendants' agreement to pay a compromised amount for Plaintiffs' attorneys' fees and expenses and to pay service payments to the Named Plaintiffs.

Specifically, under the terms of the Agreement, Defendants have agreed to pay $310,000.00 in settlement of Plaintiffs' claims for fees and expenses incurred through the date the Agreement was executed—October 12, 2016. *Id.* ¶ 10. This amounts to approximately $280,000 for Plaintiffs' attorneys fees and $30,000 for reimbursement of Plaintiffs' expenses. Additionally, Defendants have agreed to pay certain amounts in settlement of fees and expenses incurred during the administration of the post-settlement notice process outlined briefly below. *Id.* Specifically, Defendants are required to pay an additional $10,000.00 for fees and expenses if participation in the post-settlement notice process exceeds each of twenty-five percent (25%), thirty percent (30%), and thirty-five percent (35%), for a total of up to an additional $30,000.00 for fees and expenses. *Id.* These amounts reflect a reasonable fee for the amount of expected work Plaintiffs' counsel will be required to perform in the post-settlement notice process. *Id.*

7

In addition to the payment of fees, expenses, and service payments, the Agreement includes three major components. *Id.* ¶ 8. First, Defendants agree to pay $239,303.00 to the current Named and Opt-In Plaintiffs in settlement of their claims for unpaid overtime and liquidated damages. *Id.* Second, Defendants have agreed to a post-settlement notice process that will result in notice of the settlement to 757 additional similarly situated workers who are eligible to participate in the settlement, but who have not joined this action. *Id.* Third, Defendants have agreed to pay each post-settlement Opt-In Plaintiff the average weekly recovery—$11.19—for each week he or she worked in an eligible position during the period from May 19, 2013 through May 25, 2014. *Id.* Based on the information provided by Defendants, full participation in the post-settlement notice process will result in a recovery of approximately $340,000. *Id.* ¶ 24.

## II. ARGUMENT

### A. Plaintiffs' attorneys' fees and expenses are reasonable.

The agreed upon recovery of Plaintiffs' attorneys' fees and expenses represents a significant reduction to Plaintiff's counsel's lodestar. As part of the Agreement, Defendants have agreed to pay $310,000.00 for Plaintiffs' attorneys' fees and expenses incurred up to the date the Agreement was executed, and up to $30,000 in settlement of claims for fees and expenses arising out of the post-settlement notice process.

The FLSA has a fee-shifting provision that provides that a prevailing plaintiff shall recover reasonable attorneys' fees and litigation costs. 29 U.S.C. § 216(b). "Indeed, an 'award of attorneys' fees under the FLSA is mandatory . . . .'" *Thompson v. United Stone, LLC*, No. 1:14-cv-224, 2015 WL 867988, at *2 (citations omitted). "[T]he purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134

8

(6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir.1984)).

The starting point in calculating a "reasonable" attorney fee is typically the determination of the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Here, Plaintiff's counsel's actual fees through the execution of this Agreement, based on the number of hours expended multiplied by the attorneys' regularly hourly billing rates is more than $350,000. Garrison Decl. ¶ 12. Plaintiffs have also incurred expenses totaling more than $34,000 through the execution of the Agreement. *Id*. Under the Agreement, however, Defendants are required to pay $310,000—which amounts to approximately $280,000 for fees and $30,000 for expenses. *Id.* at ¶ 16 This fee payment actually represents a reduction of nearly twenty percent (20%) of the lodestar Plaintiff's counsel accrued through the execution of the Agreement. *Id.* Even including the up-to $30,000.00 to be paid for fees and expenses related to the post-settlement notice procedure, the total fees and expenses represents a reduction from Plaintiffs' counsel's lodestar and expenses. This reduction confirms that the agreed upon payment of fees and expenses does "not produce [a] windfall[]" to Plaintiff's counsel and confirms its reasonableness. *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (citations omitted).

By comparison, the Agreement provides up to approximately $580,000 in total FLSA damages to Plaintiffs—approximately $240,000 to the Named and Current Opt-In Plaintiffs and more than $340,000 if there is full participation in the post-settlement notice process. Garrison Decl. ¶¶ 8, 24. Thus, FLSA damages in this case are substantial relative to Plaintiffs' counsel's

fee recovery. Still, the Sixth Circuit has held that "[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery" because recovery of attorneys' fees under the FLSA "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134-35 (citation omitted). In fact, the Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Id.* (citation omitted);[4] *see also Williams v. Hooah Sec. Servs. LLC*, No. 09-2376-STA-TMP, 2012 WL 1022187, at *2 (W.D. Tenn. Mar. 26, 2012) (holding that "amount of attorney's fees may exceed the amount of damages awarded to plaintiffs given the nature and purpose of the FLSA") (quoting *Fegley*, 19 F.3d at 1134-35). Thus, the relative size of the fee payment and the FLSA damages recovery support approval of the Agreement. This is especially true, given that current and post-settlement Plaintiffs will recover an amount commensurate to that recovered by similarly situated workers as part of the *Abadeer* FLSA settlement, while Plaintiff's Counsel is significantly compromising on their fees. Garrison Decl. ¶¶ 16, 28.

In short, there is "a strong presumption" that the lodestar represents a reasonable fee, *McCutcheon v. Finkelstein Kern Steinberg & Cunningham*, No. 3-11-cv-0696, 2013 WL 4521016, at *1 (M.D. Tenn. Aug. 27, 2013) (Sharp, J.) (citation omitted), and an even stronger presumption exists where, as here, the agreed upon fee is below the lodestar amount.

Furthermore, Plaintiffs' counsel's hourly rates and hours expended in this case are reasonable. Whether an hourly rate is reasonable should be considered with reference to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Monroe v. FTS USA, LLC*, No. 2:08-cv-2100, 2014 WL 4472720 at *9 (W.D. Tenn. July

---

[4] *See also, e.g., Posner v. Showroom, Inc.*, 762 F.2d 1010 (6th Cir. 1985) (awarding attorney's fees amounting to nearly five times the underlying judgment); *Lakosky v. Disc. Tire Co.*, No. 14-13362, 2015 WL 4617186, at *2 (E.D. Mich. July 31, 2015) (finding settlement fair and reasonable where attorneys' fees exceeded plaintiff's recovery).

10

28, 2014) (noting, in the FLSA context, that an attorney's reasonable hourly rate should begin with an assessment of the "prevailing market rate").

When the litigation spans several years, the appropriate rate is each attorney's current hourly rate at the time of the fee petition, rather than the attorneys' historic hourly rates, as rates naturally increase over the course of the litigation. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989) (recognizing that "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed," and therefore holding that "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of [section 1988]"); *see also Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *Renfro v. Indiana Michigan Power Co.*, No. 1:99-cv-877, 2007 WL 541961 (W.D. Mich. Feb. 16, 2007) (applying current rather than historic rates in an FLSA case), *judgment vacated on other grounds in* 497 F.3d 573 (6th Cir. 2007). This requirement simply reflects the dual realities of inflation and the time value of money.

The hourly rates billed by each of the attorneys who worked on this case and for whom compensation is sought (as well as the number of hours expended on the case) are reflected in the declaration of undersigned counsel. Garrison Decl. ¶ 13. The hourly rates for each attorney are in line with the rates in the Nashville legal community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Missouri*, 491 U.S. at 286; *see also* Garrison Decl. ¶ 14. In fact, Plaintiffs' counsel billed the same rates in this litigation as they did in an FLSA case where this Court approved a settlement where fees were paid based on a lodestar calculated using these rates. *See* FLSA and Final Approval Order, *Noel v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, No. 3:11-cv-519 (M.D. Tenn.) (Sharp, J.) (Doc.

Nos. 488 and 489) (attached as collective **Exhibit A**); *see also* Garrison Decl. ¶¶ 13, 14. These hourly rates are:

| Attorney / Staff Member | Hourly Rate |
|---|---|
| David W. Garrison | $425 per hour |
| Scott P. Tift | $325 per hour |
| Seth M. Hyatt | $280 per hour |
| Joshua A. Frank | $225 per hour |
| Paralegals | $150 per hour |

Well-respected Nashville lawyers Mike Hamilton and Michael Russell, who have a great deal of experience in FLSA collective action litigation, have averred that these hourly rates for the attorneys and staff of Barrett Johnston Martin & Garrison, LLC are within the market rates in Nashville for similarly qualified, experienced attorneys and staff for similar work. *See* Declaration of Mike Hamilton ("Hamilton Decl.") ¶¶ 5, 8-11; Declaration of Michael Russell ("Russell Decl.") ¶¶ 8-11; *see also* Garrison Decl. ¶ 15.

Mr. Hamilton, who has handled complex litigation and labor matters, including FLSA collective action litigation, for nearly 40 years, notes that he considers Plaintiff's counsel "to be of the highest caliber in this field nationally and among the highest caliber of litigators in Nashville." Hamilton Decl. ¶ 9. Mr. Hamilton notes that he is familiar with several of the lawyers at Barrett Johnston Martin & Garrison, LLC, and believes that their hourly rates are "reasonable and in line with rates charged by other comparable attorney's in the Nashville legal market." *Id.* ¶ 11.

Michael Russell devotes his practices almost exclusively to labor and employment law, and has served as lead trial attorney in two FLSA jury trials and one FLSA bench trial in the last five years. Russell Decl. ¶¶ 5, 9. Mr. Russell also reviewed Plaintiff's counsel's billing records and opined that "the rates charged by the firm for this matter are reasonable hourly rates and are within the range of hourly rates that have been approved by courts for other lawyers with

12

comparable experience." *Id.* ¶ 11. Moreover, Mr. Russell explained that "these rates are reasonable considering the complicated nature of class action litigation, which requires a higher level of expertise than more routine civil litigation." *Id.*

As the Supreme Court has held, "there is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987) ("A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ."); *McCutcheon*, 2013 WL 4521016, at *1 (citation omitted) ("[T]here is "a 'strong presumption' that the lodestar 'represents a reasonable fee.'"); *Mathis v. Wayne Cty. Bd. of Educ.*, No. 1:09-cv-0034, 2011 WL 3320966, at *8 (M.D. Tenn. Aug. 2, 2011) (Trauger, J), *aff'd*, 496 F. App'x 513 (6th Cir. 2012) ("If the requested fee is essentially in line with the 'lodestar,' then there is a strong presumption that the requested fee is reasonable and recoverable.") (footnote omitted); *c.f. Adcock-Ladd*, 227 F.3d at 351("[A] trial judge's 'discomfort' with the total amount of the supported reasonable lodestar fee earned by the subject lawyer comprises a legally insufficient rationale for the reduction of that fee.").

Accordingly, this strong presumption that the lodestar represents a reasonable fee, coupled with the fact that the agreed upon fee of $280,000.00 for work performed through the execution of the Agreement represents a ***reduction of approximately twenty percent (20%)*** of Plaintiff's counsel's lodestar based largely on rates recently approved by this Court, overwhelmingly confirms the reasonableness of the agreed upon fee. *See, e.g.*, *Williams v. Bevill*, No. 4:14-cv-82, 2016 WL 773230, at *2 (E.D. Tenn. Feb. 8, 2016), *report and recommendation adopted,* No. 4:14-cv-82, 2016 WL 792417 (E.D. Tenn. Feb. 29, 2016) (FLSA

13

fee reasonable where "the attorneys represent[ed] that they have reduced their fees in order to effect settlement."); *Thompson*, 2015 WL 867988, at *2 (FLSA fee reasonable where based on reduced loadstar); *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *10 (where the fee sought is less than lodestar calculation it "strongly favors the fee requested by Plaintiffs' counsel."); *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *4 (approving fee as part of FLSA settlement where "Plaintiffs' counsel will be paid significantly less than the lodestar amount in this case.").

Therefore, Plaintiff's Counsel respectfully submits the proposed fee and expense recovery is fair and reasonable and should be approved.

### B. The agreed upon service payments for the Named Plaintiffs are reasonable and should be approved by the Court.

Pursuant to the parties' Agreement, Defendants have agreed to pay the Named Plaintiffs service payments of up to $10,000.00 each (or a total of $40,000.00). As set forth in more detail below, these service payments are intended to compensate the Named Plaintiffs for the work they rendered on behalf of the Opt-In Plaintiff class, the risks they bore, and the opportunities they sacrificed to ensure a favorable result. As detailed in the contemporaneously filed declaration of undersigned counsel, each of these Named Plaintiffs spent significant time and energy to ensure the success of this action. Garrison Decl. ¶¶ 31-37.

As set forth in detail above, the Named Plaintiffs have been actively involved in this litigation since its inception. The Named Plaintiffs have devoted substantial time and effort to this litigation despite the enormous language barrier they faced and their lack of familiarity with the American legal system. *Id.* ¶ 32. The $10,000 service payments are well-tailored to the risks and efforts the Named Plaintiffs have undertaken in advancing this action against their

employer,[5] and it does not represent unfair or preferential treatment. In fact, the Named Plaintiffs shouldered a tremendous burden in their efforts to advance this case on behalf of similarly situated current and former employees of Defendants. *Id.* ¶¶ 32-37. As a result, the increased burden the Named Plaintiffs faced spared these similarly situated employees from facing a similar burden to proceed on their own behalves in separate actions. *Id.* ¶ 36.

This burden did not prevent the Named Plaintiffs from tirelessly advancing this case. *Id.* ¶¶ 31-37. Their efforts have been instrumental in achieving the outstanding result the Agreement represents, and have not abated since the inception of this case. *Id.* As set forth in detail above, the Named Plaintiffs' service in this case includes, but is not limited to: (1) extensive outreach to potential plaintiffs, resulting in hundreds of eligible individuals participating in this case; (2) attendance at numerous meetings with their counsel related to, among other things, investigating their claims, case strategy, completing declarations in support of conditional certification, responding to 48 detailed written discovery requests, preparing for depositions, and negotiating the Agreement; (3) regular communication with Plaintiffs' counsel despite the necessity of communicating through an Arabic translator/interpreter; and (4) giving lengthy, translated depositions. *Id.* ¶ 33. In all, Plaintiffs' counsel's billing records reflect that each of the Named Plaintiffs spent at least the following working on this case with their counsel: Farah Awad, approximately 30 hours; Ata Boules, approximately 35 hours; Nagy Eilia, approximately

---

[5] Named Plaintiffs Ata Boules, Nagy Eilia, and Gawhara Eilia are current employees of Defendants. *Id.* ¶ 32. Indeed, courts have noted that "such awards are particularly appropriate in the employment context" given the risk "of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005). That is particularly true under the facts of this case, where three of the Named Plaintiffs have worked with and regularly interacted with both Opt-In Plaintiffs and Defendants' managers in the regular course of their duties during the entire time this action was pending. While Named Plaintiffs do not assert that they suffered any retaliatory treatment, the risk they ran in leading this lawsuit was not trivial and it more than warrants the agreed upon service payments.

31 hours; and Gawhara Eilia, approximately 27 hours.[6] *Id.* ¶ 37. Of course, this does not include the time they spent making their most significant contribution to this case—namely, ensuring that hundreds of similarly situated workers joined this case without the benefit of receiving Court-supervised notice. *Id.*

In addition to being warranted by the substantial efforts of the Named Plaintiffs, the agreed upon service payments are in line with those approved by this Court and other district Courts within the Sixth Circuit. *See, e.g.*, FLSA and Final Approval Order at 2, *Noel v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, No. 3:11-cv-519 (M.D. Tenn.) (Sharp, J.) (**Exhibit A**); Final Approval Order at 1, *Abadeer v. Tyson Foods, Inc.*, No. 3:09-cv-00125, (M.D. Tenn. Oct. 17, 2014) (Doc. No. 420) (Sharp, J.) (approving service payments of up to $11,500.00) (citing to Exhibit 2 of Settlement Agreement, DE 411.1 at 57) (attached as **Exhibit B**); Order & Final Judgment at 4, *Carroll v. Guardian Home Care Holdings, Inc.*, No. 3:14-cv-01722 (M.D. Tenn. Aug. 31, 2015) (Doc. No. 68) (Haynes, J.) (approving service payment of $10,000.00 to named plaintiff) (attached as **Exhibit C**); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving service payment of $12,500 to the named plaintiff in FCRA case where class members received either $260 or 1,000 each, finding "that the incentive award does not undermine the fairness of the settlement"); *Dallas v. Alcatel-Lucent USA, Inc.,* No. 09-14596, 2013 WL 2197624, at *11 (E.D. Mich. May 20, 2013) ) (incentive payments justified where

---

[6] Recently, the Sixth Circuit suggested that in petitioning for service payments plaintiffs' counsel should provide evidence through their billing records of the time spent by each recipient of a service payment. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016). Accordingly, Plaintiffs' counsel have offered a declaration noting the time spent by each Named Plaintiff, as reflected in their billing records. *Id.* ¶ 37. Of course, this recorded time does not account for all the time spent by these individuals in the advancement of this litigation. *Id.*

plaintiffs "responded to discovery requests, including document productions; participated in many conferences with Plaintiffs' counsel; and took the risk of joining this litigation at an early stage"); *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *15 (N.D. Ohio Sept. 1, 2011) (finding incentive payments justified). This is consistent with the practices of district courts outside of the Sixth Circuit as well. *See, e.g.*, *Camp v. Progressive Corp.*, No. 01-2680, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) (approving service payment of $10,000 to named plaintiff and payments ranging from $1,000 to $2,500 to other FLSA collective action members who assisted in the litigation).

In short, the substantial efforts of the Named Plaintiffs and the excellent outcome achieved as a result of those efforts, justifies service payments in the amount of $10,000 to each Named Plaintiff.

## III. CONCLUSION

For the reasons stated above, Plaintiffs submit that the Court should approve all aspects of the Agreement, including the agreed upon payment of attorneys' fees and expenses as well as the agreed upon service payments to each of the four Named Plaintiffs, and enter the proposed order attached to the parties' Joint Motion.

Dated: October 13, 2016        Respectfully submitted,

/s/ David W. Garrison
**JERRY E. MARTIN (No. 20193)**
**DAVID W. GARRISON (No. 24968)**
**SCOTT P. TIFT (No. 27592)**
**SETH M. HYATT (No. 31171)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
jmartin@barrettjohnston.com

dgarrison@barrettjohnston.com
stift@barrettjohnston.com
shyatt@barrettjohnston.com
jfrank@barrettjohnston.com

**CHARLES P. YEZBAK, III**
YEZBAK LAW OFFICES
2002 Richard Jones Road
Suite B-200
Nashville, TN 37215
Telephone: 615-250-2000
Facsimile: 615-250-2020
yezbak@yezbaklaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this *Plaintiffs' Memorandum in Support of their Attorneys' Fees, Expenses, and Service Payments to the Named Plaintiffs* was filed electronically with the Clerk's office by using the CM/ECF system and served electronically upon the parties as indicated below through the Court's ECF system on October 13, 2016:

Michael J. Mueller
Evangeline C. Paschal
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
epaschal@hunton.com
mmueller@hunton.com

Kenneth Weber
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, TN 37201
kweber@bakerdonelson.com

*Attorneys for Defendants*

    /s/ David W. Garrison
    DAVID W. GARRISON
    **BARRETT JOHNSTON**
      **MARTIN & GARRISON, LLC**